GLASSTECH, INC., Plaintiff-Appellant,

v.

AB KYRO OY, Defendant-Appellee.

Appeal No. 85–1975.

United States Court of Appeals,
Federal Circuit.

Aug. 6, 1985.

Ernie L. Brooks, Brooks & Kushman, Southfield, Mich., argued for appellant. With him on brief was Mark A. Cantor, Southfield, Mich.

Ronald L. Grudziecki, Burns, Doane, Swecker & Mathis, Alexandria, Va., argued for appellee. With him on brief was David D. Reynolds, Alexandria, Va.

Before BALDWIN, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

This appeal is from an order of the United States District Court for the Eastern District of Michigan, denying the motion of plaintiff-appellant Glasstech, Inc. for entry of a preliminary injunction and temporary restraining order against defendant-appellee AB Kyro OY, to prevent the infringement by Kyro of Glasstech's U.S. Patent No. 3,994,711 (the '711 patent). We remand to the district court with instructions to vacate its decision for lack of jurisdiction.

*Background*

On the complaint of Glasstech, Inc., on November 10, 1983 the International Trade Commission initiated an investigation of an alleged violation of Section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, based on the importation of certain glass tempering furnaces made in Finland by AB Kyro OY and asserted to infringe the '711 patent. On August 15, 1984 the Commission issued its Initial Determination, deciding the issues of patent validity and infringement in Glasstech's favor. The Commission issued an Exclusion Order on November 16, 1984.

On August 16, 1984 Glasstech filed suit against Kyro in the Eastern District of

Michigan, requesting an injunction against infringement of the '711 patent and an accounting to determine damages. The target of this action was, according to Glasstech, use and sale in the United States of Kyro's glass tempering equipment imported prior to the effective date of the Exclusion Order.

Following the Commission's decision Kyro made known its intention to manufacture or assemble, in the United States, the glass tempering equipment it had been importing, thus presumably avoiding the impact of the Exclusion Order. In consequence, on October 2, 1984 Glasstech moved for a preliminary injunction, in the action then pending in Michigan, seeking to restrain Kyro's manufacturing activities in the United States pending resolution of the issues in the Michigan action. The court denied the motion without prejudice on December 17, 1984, holding that Glasstech "failed to adequately demonstrate that irreparable harm will result from a denial of injunctive relief" and concluding that "[a]t best, plaintiff's motion is premature." On December 28, 1984 Glasstech filed a renewed motion for a preliminary injunction and temporary restraining order, supplementing the record with evidence purporting to show irreparable harm. It is from denial of that motion that this appeal is taken.

In April of 1984 Glasstech had filed complaints, in various district courts having jurisdiction, against at least seven customers of Kyro or its subsidiary companies, asserting infringement of the '711 patent. At Glasstech's request, and without apparent objection, these suits were consolidated by the Judicial Panel on Multidistrict Litigation (Panel), and assigned to the District Court for the Northern District of Ohio. Consolidated pretrial proceedings are governed by 28 U.S.C. § 1407(a), which provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions

may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.... *Provided, however,* that the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

On November 6, 1984 the Panel issued a "Conditional Transfer Order" which appears, although details are not in the record before us, to have been opposed by Glasstech with respect to the Michigan proceeding. The Panel denied this opposition on January 30, 1985. On February 4, 1985 the Panel's order transferring the Michigan action to the Northern District of Ohio was filed with the Ohio court, in accordance with 28 U.S.C. § 1407(c) which provides in part:

> Orders of transfer ... shall be filed in the office of the clerk of the district court of the transferee district and shall be effective when thus filed. The clerk of the transferee district court shall forthwith transmit a certified copy of the panel's order to transfer to the clerk of the district court from which the action is being transferred.

The Panel's transfer order was thus effective February 4, 1985. It was recorded as filed in the Eastern District of Michigan on February 6th. By order dated February 6 and filed February 7, 1985, the Michigan district court denied Glasstech's renewed motion, as follows:

> This matter having come before the court on plaintiff's motion for temporary restraining order and preliminary injunction filed December 28, 1984; and the court having reviewed all the documents submitted by plaintiff including deposition testimony; and it appearing to the

court that this information does not alter the court's reasoning or conclusion as set forth in the order filed December 17, 1984; and it appearing to the court that this case has been transferred to the Northern District of Ohio pursuant to Rule 9 of the *Rules of Procedure of the Judicial Panel on Multidistrict Litigation,* 89 F.R.D. 273;

NOW, THEREFORE, IT IS ORDERED that plaintiff's motion under Rule 65 for a temporary restraining order and preliminary injunction be and the same hereby is DENIED.

Thus the court decided the matter before it, requiring us to determine whether it had been divested of authority prior to its decision, and if so, whether our appellate jurisdiction must also fail.

The governing statute, 28 U.S.C. § 1407, is silent on the precise fate of matters *sub judice* at the time a case is officially transferred. Rule 16, 28 U.S.C. § 1407–16, states in part:

The pendency of a ... conditional transfer order before the Panel concerning transfer ... pursuant to 28 U.S.C. § 1407 ... does not in any way limit the pretrial jurisdiction of that [transferor] court. A transfer ... shall be effective when the transfer ... order is filed [in the transferee court].

This lack of detail in the statute has been clarified by the Panel and the courts. Starting with the *In re Plumbing Fixture Cases,* 298 F.Supp. 484 (J.P.M.D.L.1968), the Panel has consistently stated that transfer divests the transferor court of jurisdiction; drawing an analogy to the venue statute, the Panel stated that a transfer under section 1407 was "a change of venue for pretrial purposes":

On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor

court in the absence of transfer; that after an order changing venue *the jurisdiction of the transferor court ceases;* and that thereafter *the transferor court can issue no further orders, and any steps taken by it are of no effect.* These principles are applicable to a transfer under Section 1407 *from the time of entry of the orders of transfer* until the time of entry of an order to remand. [Emphases added.]

298 F.Supp. at 495–96 (citations omitted). This ruling was premised on two grounds; first, that the purpose of section 1407 was to eliminate the potential for conflicting pretrial rulings, *id.* at 496; and second, that "[t]wo courts of exclusive different jurisdictions, or venues, cannot exercise control over the same single claim for relief at the same time." *Id.* at 495. Dissenting-in-part, Judge Weinfeld expressed the view that no transfer order could divest a court of jurisdiction to determine motions *sub judice. Id.* at 497.

At least two appellate courts have followed the *Plumbing Fixture* position. *See, e.g., In re UpJohn Co. Antibiotic Cleocin Products Liability Litigation,* 664 F.2d 114, 118 (6th Cir.1981) ("power of the Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to transfer district court proceedings from one court to another should divest the transferor court of any further authority") and *General Electric Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir.1979) ("any action taken by the transferor court after transfer would be ineffective"). Decisions by district courts are in accord. *See, e.g., In re Multidistrict Civil Actions Involving the Aircrash Near Duarte, California, on June 6, 1971,* 357 F.Supp. 1013, 1015 (C.D.Cal.1973); *City of St. Paul v. Harper & Row Publishers, Inc.,* 292 F.Supp. 837, 838 (D.Minn.1968). *See also Manual for Complex Litigation,* § 31.1.2 at 31–4 (2d Draft, February 1985) ("Once a transfer under § 1407 becomes effective— when the order granting the transfer is filed in the office of the clerk of the trans-

feree court—the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction.").[1]

Despite this weight of authority, both Glasstech and Kyro, having briefed and argued this appeal before this court, ask us to decide the merits of the matter. In a joint submission to this effect, the parties direct our attention to *Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir.1978), wherein the Eighth Circuit accepted an appeal from an order that had been entered by the transferor court after the action had been transferred. The Eighth Circuit court did not comment on the authority of the district court to have ruled on the motion, and referred to its own jurisdiction only in the clause "Assuming that the appeal could properly be brought in either [the Eighth (transferor) Circuit or the Fifth (transferee)] Circuit....", *id.* at 164, thus treating the order as valid. The circuit court stated that the order involved the allegedly unethical conduct of attorneys within the Eighth Circuit, a matter of local concern, and that hearing of the appeal would not materially impede proceedings in the transferee court.

■ Glasstech and Kyro suggest that this authority supports the exercise of jurisdiction by this court. It is beyond debate that an appellate court has no jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction. As the Supreme Court

has observed, "the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). In the case at hand the Michigan district court itself raised the issue of its continuing jurisdiction, even as it decided the motion before it.

Although courts have authority to act to preserve the *status quo* while determining their jurisdiction, *United States v. United Mine Workers of America*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947), this theory does not validate the order of the Michigan court for purposes of appeal on the merits, since the Michigan court was in fact without jurisdiction.

■ Despite the interests of judicial economy and the benefits to the parties in advancing the litigation, no interest is served by an appellate decision under a jurisdictional cloud. The parties can not confer jurisdiction by mutual consent. And it has long been established that a party is not prevented from subsequently challenging a court's jurisdiction which the party had previously invoked. *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 125, 2 L.Ed. 229 (1804).

■ The statute, rules, and precedent lead to the conclusion that the Michigan court had been divested of jurisdiction on

---

**1.** In harmony with this statutory interpretation, the stated policy of the Panel is to consider whether motions are pending in deciding whether and when to transfer a case. In *Plumbing Fixture* the Panel stated:

> On principles of comity, where appropriate, the Panel has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts (and Courts of Appeals if they are involved) to reach timely decisions on particular issues without abrupt, disconcerting, untimely or inappropriate orders of transfer by the Panel. This policy of comity has been followed in the past and will be followed in the future by the Panel.

298 F.Supp. at 496. In *In re L.E. Lay & Co. Antitrust Litigation*, 391 F.Supp. 1054, 1056 (J.P.

M.D.L.1975), the Panel stated that it was "reluctant to transfer any action that has an important motion under submission with a court". In *In re Professional Hockey Antitrust Litigation*, 352 F.Supp. 1405, 1407 (J.P.M.D.L.1973), the panel denied transfer when the plaintiff's motions for preliminary injunction were *sub judice*. In *In re Multidistrict Civil Actions Involving the Mid-Air Collision Near Hendersonville, North Carolina on July 19, 1967*, 297 F.Supp. 1039, 1040–41 (J.P.M.D.L.1969), the Panel denied transfer while the plaintiffs sought appellate review of a decision ordering a change of venue under 28 U.S.C. § 1404. The record before us does not touch on these matters, but reports that the transfer of this case from Michigan to Ohio was duly completed.

February 4, 1985, two days before its decision of February 6, 1985. As the Michigan court's order was without authority, this court does not have jurisdiction to review the correctness of that order.

REMANDED WITH INSTRUCTIONS TO VACATE.