*1062
 
 PAULINE NEWMAN, Circuit Judge.
 

 The decision of the United States Claims Court, denying appellant’s motion for summary judgment, granting appellee’s cross-motion for summary judgment, and dismissing appellant’s complaint, is affirmed.
 

 OPINION
 

 The facts surrounding this pre-Civil Service Reform Act appeal are set forth in the Claims Court’s opinion, 6 Cl.Ct. 54 (1984), and are not disputed by the parties. That opinion also contains a summary of the initial decision of the Presiding Official at the Denver Field Office and the final decision of the Merit Systems Protection Board (Board). We have reviewed the entire record, the positions expounded at oral argument, and the post-hearing submissions.
 

 I.
 

 The record shows that appellant had filed a related claim of discrimination with the Equal Employment Opportunity Commission (E.E.O.C.), arising from the same facts. At oral argument the court raised the question of whether it had jurisdiction to hear this appeal if the discrimination claim was still pending, and invited post-hearing submissions on this point.
 

 Appellant confirmed that a
 
 pro se
 
 complaint alleging religious discrimination was filed on October 12, 1979 and is pending before the E.E.O.C. as Docket No. 03800147. However, as the ease before the court arose prior to the effective date of the Civil Service Reform Act of 1978, appellant argues that the rule of
 
 Williams v. Dept. of the Army,
 
 715 F.2d 1485 (Fed.Cir.1983) does not apply and that the issues in this appeal can be adjudicated, citing
 
 Ballentine v. Merit Systems Protection Board,
 
 738 F.2d 1244 (Fed.Cir.1984).
 

 In response, the government agreed that
 
 Williams
 
 has no application to an “old system” case, but disagreed that the existence of a pending claim before the E.E.O.C. is of no moment. The government observed that both the initial decision of the presiding official and the preliminary decision of the full Board stated that the Board’s decision would not become final on the non-discrimination issues until the E.E. O.C.’s decision on the issue of discrimination became final.
 
 See
 
 5 C.F.R. § 1201.-165(d)(2). Since the E.E.O.C. had not acted upon such claim by appellant, the government concluded that “neither the presiding official’s decision nor the full MSPB’s decision are ‘final’ and the Claims Court would not have had jurisdiction to review the MSPB’s decision in this case.”
 

 The government stated that this conclusion requires this court to vacate the Claims Court’s decision for lack of jurisdiction, but the government nevertheless joined with appellant in asking the court to adjudicate this appeal on the merits. The government argued that the parties and the courts had devoted a great deal of time to this case and that appellant never advised the courts involved or the government of the pendency of his E.E.O.C. claim until after argument in this case.
 
 [1]
 
 Under such circumstances, it “would not be equitable or in the interest of justice to allow Dr. Garfield’s silence to enable him to avoid the unfavorable decision he received from the Claims Court by advising this Court and the Government of the existence of his E.E.O.C. claim at this late date.”
 

 The government’s position is that the court should decide the appeal despite a presumed lack of jurisdiction in the lower court. Jurisdiction cannot be created by consent of the parties.
 
 See Glasstech, Inc. v. AB Kyro OY,
 
 769 F.2d 1574, 1577 (Fed.Cir.1985).
 

 We agree that it is in the interest of all concerned that the matter be finally adjudicated. Accordingly, the court inquired about the status of the E.E.O.C. claim, the perceived jurisdictional barrier in this appeal. Appellant affirmed his intent to pursue the E.E.O.C. claim to its conclusion, and urged the court to maintain its jurisdiction over the case at bar, expressing con
 
 *1063
 
 cern that the present action would be time-barred under 28 U.S.C. § 2401 if appellant were required to delay filing until final resolution of his E.E.O.C. claim.
 

 Upon review of all the circumstances, we conclude that the government’s position concerning the absence of jurisdiction in the Claims Court is not correct. The issue is not jurisdiction, but whether the fact that the Board’s order was not final precluded the Claims Court from entertaining this suit. While actions arising under the Civil Service Reform Act of 1978 require that there be a final order or decision of the Board before an appeal can be taken, 5 U.S.C. § 7703(a)(3), no such requirement existed for “old system” eases.
 

 The government directs our attention to 5 C.F.R. § 1201.165. This section is relevant only if appellant had appealed from an adverse decision of the Board. However, appellant did not “appeal” to the Claims Court but filed an independent civil action for back pay and reinstatement. Such a suit is in the nature of a collateral attack on the Board’s preliminary decision, rather than an appeal from a final decision.
 

 A final Board decision will normally be required by the Claims Court before it will entertain such a suit, under the general principle of exhaustion of administrative remedies, but its absence did not deprive the Claims Court of jurisdiction on the facts of this “old system” case. The Claims Court’s exercise of jurisdiction was of pragmatic virtue: First, the preliminary decision of the Board is “final” in the practical sense. Completion of appellant’s E.E. O.C. claim will not alter the Board’s decision on the nondiscrimination issues. Second, neither the government at trial or on appeal, nor the Claims Court
 
 sua sponte,
 
 raised the question whether the suit was premature because of the lack of a final order. The Supreme Court has held that exhaustion of remedies is not a bar to judicial review if the agency fails to assert a lack of exhaustion as a basis for opposing review, and the same principle applies here.
 
 See Weinberger v. Salfi,
 
 422 U.S. 749, 765-67, 95 S.Ct. 2457, 2466-68, 45 L.Ed.2d 522 (1975).
 
 See also Mathews v. Diaz,
 
 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976);
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Accordingly, we conclude that this appeal is ripe for adjudication, and that no waiver or estoppel concerning appellant’s pending E.E.O.C. claim is required.
 

 II.
 

 Appellant’s main contention on appeal is that he accepted appointment as Regional Director for HEW’s Region VIII with the express understanding that he would retain his competitive status and career tenure, and that his subsequent removal on the basis of political party affiliation was contrary to statute and regulation. The record shows that the position of Regional Director was filled by Limited Executive Assignment (LEA); the regulations provide that an employee appointed under LEA authority does not acquire competitive status or career tenure. 5 C.F.R. §§ 9.9, 305.509(c). Although a person cannot be selected for a Career Executive Assignment (CEA) on the basis of political affiliation, no such restriction applies to an LEA appointment.
 
 Compare
 
 5 C.F.R. § 9.5(a) with 5 C.F.R. §§ 9.6(a)(2), 305.-509(a)(2).
 

 While the agency failed to comply with the procedures set out in F.P.M.Supp. 296-31, Subch. Sl-2(c) requiring,
 
 inter alia,
 
 written notice to the appellant that he was leaving the competitive service and a clear statement by appellant that he was doing so voluntarily when he accepted the LEA appointment, this defect was corrected by the agency within three months of the appointment. The Clarke letter of January 4, 1972 is substantial evidence that the appellant was informed that he was appointed pursuant to LEA authority “which does not' provide ‘career rights’ as such to a GS-15 position.” Although the agency was aware of appellant’s “desire to return to the career service at some future date”, the record does not show an unconditioned promise to appellant on behalf of the agency that his status would be converted to a
 
 *1064
 
 career appointment in the competitive service. By remaining in the position of Regional Director and having received the benefits that accompanied this appointment, the appellant impliedly consented to the conditions which attached to the office.
 

 The only representation made to appellant was that the agency could and presumably would change his appointment to a career appointment after he had completed five years of continuous service under LEA. Indeed, 5 C.F.R. §§ 9.10 and 305.510 provide a variety of alternatives available to an agency when a five year LEA expires, including conversion to a CEA or a career appointment in the competitive service at GS-15 or below.
 

 The agency never had the opportunity to act on Dr. Garfield’s behalf under 5 C.F.R. § 305.510 because Executive Order No. 11839 converted all HEW Regional Director positions into Non-Career Executive Assignments (NEAs) effective January 15, 1975.
 
 Cf
 
 5 C.F.R. § 9.11. While appellant maintains that the Executive Order did not apply
 
 to
 
 him because of his prior “agreement” with the agency, we find no such saving provision in the Executive Order. We note that even if the Executive Order had not been issued, the Civil Service Commission could have revoked the LEA at any time. 5 C.F.R. § 305.509(b). Appellant had no “right” to a position in the competitive service, only an expectancy contingent upon completion of five years of LEA service.
 

 As appellant was holding a NEA when there was a change of administrations, his removal on the basis of political affiliation was lawful. By express regulation, a person holding a NEA will be deeply involved in the advocacy of administration programs, will participate significantly in the determination of major political policies of the administration, or will serve principally as an advisor to a presidential appointee. 5 C.F.R. §§ 9.20(a), 305.601(b). A position cannot be filled by NEA if its principal responsibility is the internal management of the agency or if it involves “long-standing recognized professional duties and responsibilities resting on a body of knowledge essentially politically neutral in nature”. 5 C.F.R. §§ 9.20(c), 305.601(c). Further, a NEA shall be abolished when “the qualifications or relationship required for the assignment change or cease to exist”. 5 C.F.R. §§ 9.23, 305.604.
 

 Appellant’s letter of proposed removal stated that the basis of the removal was the lack of a close, confidential relationship between appellant and the new Secretary of the Department. Whether or not appellant’s political affiliation was responsible for the Secretary’s “lack of confidence” in appellant’s ability satisfactorily to fill the requirements of the position, it is established that political affiliation can be an important requirement of a NEA. We find substantial evidence in the record to support the finding that appellant’s removal would promote the efficiency of the service.
 
 See Shaw v. United States,
 
 640 F.2d 1254 (Ct.Cl.1981).
 

 Appellant relies on 5 C.F.R. § 752.104(b) (1977) for the proposition that the agency cannot take an adverse action against appellant for partisan political reasons. Section 752.104(b) only applies to employees “covered” by part 752 of Title 5. An employee in a NEA is not covered by 5 C.F.R. §§ 752.201(a) and 752.301(a) (1977), and an employee in a LEA would nevertheless be exempted from coverage pursuant to 5 C.F.R. § 752.103(a)(9) (1977), as these regulations were in effect at the time.
 

 Similarly, appellant’s claims that he has satisfied the requirements for career tenure are not supported by the record. At the time appellant accepted the Regional Director position, he had a little more than a year in the competitive service. As a career-conditional employee, appellant needed a total of three years of creditable service to become a career employee with career tenure. 5 C.F.R. §§ 315.201(a), 315.-202. However, part 315 of Title 5 does not apply to positions in the excepted service absent a specific provision in the regulations; 5 C.F.R. § 210.101, and 5 C.F.R. §§ 305.509(c), 305.603 make clear that employees serving under a LEA or NEA do
 
 *1065
 
 not acquire a competitive status on the basis of that service. Thus, the time appellant spent as Regional Director cannot be used to satisfy the career tenure requirements.
 

 As a preference eligible with more than one year of continuous government service, appellant was entitled to all of the procedural protections that would have been available to him had he been in fact in the competitive service.
 
 See
 
 5 U.S.C. §§ 7511-7513. We have carefully considered all of appellant’s arguments, but we agree with the Claims Court that the requirements of the statute in effecting appellant’s removal were met.
 

 AFFIRMED.
 

 [1]
 

 . We note, however, that the trial judge’s opinion reflects knowledge of a discrimination claim pending in another forum.
 
 See 6
 
 Cl.Ct. at 58 n. 9.